IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 22-CR-220-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  TORY SMART

    Defendant.

## GOVERNMENT'S PSR OBJECTION

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits the following objection to the Presentence Investigation Report ("PSR").  ECF #53.

Paragraph 29.  The PSR adds a two-level enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1).

In order for this enhancement to apply, the Government "has the initial burden of proving possession of the weapon . . . by a preponderance of the evidence."  *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184-85 (10th Cir. 2004).  The Tenth Circuit has held that "[t]his burden is met by establishing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."  *Id.* at 1185 (internal quotation marks omitted).  Further, this enhancement can also apply when someone else—like a co-defendant—commits acts for which we the defendant would otherwise be accountable pursuant to U.S.S.G. § 1B1.3.  *United*

1

*States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir. 1991).  In other words, a defendant may be held accountable for reasonably foreseeable weapons possession by another person who commits acts for which the defendant is responsible.  *United States v. Foy*, 641 F.3d 455, 470 (10th Cir. 2011). If the Government meets this initial burden, the burden then shifts to the defendant to establish that "it is clearly improbable that the weapon was connected with the offense."  *Id.*

Whether the U.S.S.G. § 2D1.1(b)(1) enhancement applies to this defendant is a close call, but the Government stands by the non-application of the enhancement to which the Government agreed in the plea agreement.  ECF #41.  The was firearm found in the trunk of the vehicle in which the defendant and his co-defendant, Derek Swingle, were traveling.  The vehicle was driven by, belonged to, and was registered to, Swingle.  The firearm's purchase was traced to Swingle.  The defendant told investigators that he and Swingle sometimes went shooting in Oklahoma, but that he did not know the firearm was in the trunk of Swingle's car on July 2, 2022.  Investigators also located a loaded firearm magazine in the center console of Swingle's car, in a location that would have been easily accessible and apparent to both the defendant and Swingle.[1]

The Government does not believe it could prove that the defendant knew the gun was in the trunk.  The car—both the passenger compartment and trunk—was a mess.  It was full of both defendants' belongings, trash, and assorted debris.  The firearm was located after an officer removed layers of items from the trunk, including items that likely

---

[1] The ammunition in this magazine formed the basis for Count Three of the Indictment, charging the defendant with being a felon in possession of ammunition.  ECF #13.  Neither the defendant nor Swingle were indicted for possession of the firearm located in the trunk.

stay with the vehicle, such as jumper cables and a jack.  The firearm, which was loaded, was located inside a holster at the very bottom of the trunk.  Given the state of the vehicle, and the place in which the firearm was located, the Government does not believe it could prove by a preponderance of the evidence that the defendant actually possessed the firearm.

The next question is, then, whether Swingle's possession of the firearm on July 2, 2022, was reasonably foreseeable to the defendant.  To the Government, this is the much closer question.  The PSR points out that the defendant knew that Swingle had firearms and shot them recreationally in Oklahoma.  And, in addition, there was ammunition and a magazine in the passenger compartment of the vehicle, clearly visible to the defendant.  But, the fact that the defendant knew that Swingle had guns in Oklahoma also means that the defendant's observation of the magazine and ammunition in the passenger compartment of the vehicle—which, recall, was a mess—would not necessarily suggest to the defendant that Swingle brought a gun with him to Colorado.  Instead, it is entirely plausible that there are often magazines and ammunition among the other detritus in Swingle's vehicle.  And there is no evidence whatsoever that the defendant actually observed the firearm in the trunk.  Accordingly, on balance, the Government does not believe it could prove that Swingle's possession of the firearm in the trunk was reasonably foreseeable to the defendant.

The Government does agree, however, that Swingle's possession of the firearm otherwise qualifies for the enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) since the "weapon was present" and it is not "clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, cmt. 11(A).

If the Court disagrees with the Government's analysis and believes the U.S.S.G. § 2D1.1(b)(1) enhancement does apply to this defendant, the Government will respectfully request that the Court nevertheless vary downward and sentence the defendant to 24 months' imprisonment, as the parties have requested in the plea agreement that was made pursuant to Fed. R. Crim. Pro.(c)(1)(C).[2]

Respectfully submitted this 16th day of December, 2022.

                COLE FINEGAN
                United States Attorney

By:    s/ Andrea Surratt
        Andrea Surratt
        Assistant United States Attorney
        U.S. Attorney's Office
        1801 California St., Suite 1600
        Denver, CO 80202
        Telephone: (303) 454-0100
        e-mail: Andrea.Surratt@usdoj.gov
        Attorney for the Government

---

[2] As noted in the plea agreement, the parties agreed upon, and submitted to the Court for its consideration, a plea agreement pursuant to Rule 11(c)(1)(C) because of the uncertainty about whether one of the defendant's prior convictions would have qualified him as a career offender for purposes of U.S.S.G. § 4B1.1(a). By agreeing to a Rule 11(c)(1)(C) plea, the Government's intent was to afford certainty to the defendant that he would not be sentenced as a career offender.