IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-cr-00220-RMR

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.  **TORY SHANE SMART**,

       Defendant.

**DEFENDANT'S OBJECTIONS AND RESPONSE TO THE PRESENTENCE REPORT**

The defendant, Tory Shane Smart ("Mr. Smart"), by and through undersigned counsel, David E. Johnson, hereby files the below Objections and Response to the Presentence Report (Doc. 53 ("PSR")):

**OBJECTION THAT AFFECTS THE GUIDELINE CALCULATION**

**Paragraphs 28-29, 36, 89**: The 2-level enhancement under Guideline Section 2D1.1(b)(1) does not apply.

The PSR applies a 2-level enhancement pursuant to Guideline Section 2D1.1(b)(1) due to Mr. Smart's co-defendant possessing a firearm in the trunk of his (the co-defendant's) vehicle. *See* PSR at ¶¶ 28-29. Mr. Smart objects. (As has the government. *See* Doc. 54.). Absent the PSR's incorrect application of the 2-level enhancement, the correct total offense level is 10, and the correct guideline range is 24 to 30 months. *See* PSR at ¶¶ 36, 89.

To begin, it appears all agree that the firearm found in the vehicle's trunk was *not* Mr. Smart's. "The vehicle was driven by, belonged to, and was registered to, Swingle.

The firearm's purchase was traced to Swingle." And the firearm was found in the trunk of Swingle's vehicle. Doc. 54 at 2. Nor does Mr. Smart have any history of firearm possession. In all of Mr. Smart's prior interactions with law enforcement, he was never once found with a firearm or alleged to have possessed a firearm.

Instead, the PSR applies the enhancement based on "relevant conduct" of co-defendant Swingle. The PSR is incorrect. Here, the government itself admits that it could not prove Mr. Smart "knew the gun was in the trunk." Doc. 54 at 2. To be clear: Mr. Smart, in fact, had no knowledge of the small firearm found in co-defendant Mr. Swingle's trunk. Mr. Smart never saw the firearm, and he did not know it was there.

As explained by both the government and by Mr. Smart in more detail below, the firearm's presence in the vehicle was not at all apparent from an outside observer. Law enforcement discovered the small firearm only after removing virtually every other item that was in Mr. Swingle's trunk. *See generally* Attachment 1. And, even then, given the color of the firearm and its holster it was virtually camouflaged with the trunk's dark interior. *Id*. If Mr. Smart had no knowledge of the small firearm in his co-defendant's trunk, then this Court cannot conclude that it was "within the scope" of Mr. Smart's conduct, as required by Guideline Section 1B1.3(a)(1)(B)(i). That alone should end the matter. *See* U.S.S.G. § 1B1.3(a)(1)(B) (the three requirements listed in the disjunctive "and").

Nevertheless, the PSR claims that two factors support the enhancement. First, the PSR claims that Mr. Smart must have seen a firearm magazine that was claimed to be "near the center console of the vehicle." PSR at ¶ 29. Mr. Smart objects to any factual statement that he was aware of or saw the magazine. Mr. Smart does not know

2

where the magazine was located in the messy, cluttered car because, frankly, he never saw it. (Although, as explained below, the officer who found the magazine first described it as being "underneath the seat"). But even if he did have knowledge of the magazine (which he didn't), that does not show he had knowledge of the firearm.[1] Second, the PSR claims that Mr. Smart "knew his codefendant to possess firearms", and Mr. Smart told law enforcement they would "go shooting together." PSR at ¶ 29. Mr. Smart's honesty on this subject demonstrates that he was also being honest when he denied knowledge of any firearm being in the vehicle. Mr. Smart's credibility should be enhanced by his honesty relating to firearms. Simply stated, there is no reason for this Court to conclude that Mr. Swingle's firearm in the trunk was "reasonably foreseeable" to Mr. Smart.[2]

In sum, this Court should not apply the two-level enhancement. The correct guideline range is 24 to 30 months.

## OTHER OBJECTIONS AND RESPONSES

<u>Page 2 (SSN)</u>: The third digit of Mr. Smart's social security number is incorrect in the PSR. Undersigned counsel has sent a communication to the PSR author correcting

---

[1] As even the PSR appears to recognize, possession of only the magazine or ammunition is insufficient to apply the 2-level enhancement.

[2] The government does argue that the firearm found in Mr. Swingle's trunk was "in furtherance" of any drug conduct, as required by Section 1B1.3(a)(1)(B)(ii). *See* Doc. 54 at 3 (stating that "the 'weapon was present' and it is not 'clearly improbable that the weapon was connected with the offense.'") Under the facts here, Mr. Smart would disagree. The small, holstered firearm was inaccessible to the vehicle's occupants, and it was located underneath a pile and mess of other objects in the trunk. Further, Mr. Swingle possessed the firearm for lawful purposes – recreational shooting. Thus, it is "clearly improbable" Mr. Swingle's possession of the firearm was connected with the offense. Under the facts here, this Court need not decide that issue, given that the other requirements of Section 1B1.3(a)(1)(B) are clearly not satisfied.

Mr. Smart's SSN, as shown in the PSR. (N.B. According to undersigned counsel's notes from the PSR interview, Mr. Smart did provide the PSR author with his correct social security number.  The PSR appears to be the result of a scrivener's error).

Paragraphs 13, 29 (location of the firearm magazine): The PSR attempts to describe where a 9mm firearm magazine was found inside of co-defendant Mr. Swingle's car, and its relation to other items found. It first states that the officer said he observed the firearm magazine "in the change tray near the center console of the vehicle." PSR at ¶ 13. It also claims that "[n]ext to the firearm magazine", the officer found "a straw with a white powdery substance inside". *Id*. There is significant ambiguity on this issue.

The officer who found the items is U.S. Forest Service Officer Radford. In his written report he describes: "During a probable cause search of the vehicle, I found a white straw shaped object that had a white residue inside of it in front of the center console. In the same area was a pistol magazine containing 9mm rounds."

First, the body camera footage shows that when Officer Radford first mentioned locating the firearm magazine, he announced to his fellow-officers that it was located "underneath the seat".  *See* Attachment 2 at time stamp 15:35:05.[3]  A few minutes later, the straw is found *inside* of the center console, after Officer Radford had rummaged through the console. *See* Attachment 2 at time stamp 15:37:46. The firearm magazine

---

[3]  Attachments 1 and 2 are excerpted clips from INV 34, which is Officer Radford's body camera footage of his search of Mr. Swingle's car and trunk. INV 34, as disclosed in discovery, is 49 minutes and 23 seconds long. For convenience, the relevant excerpted portions of the automobile search are attached herein.  The time-stamp citations refer to the time shown in the upper-right corner of the body camera footage, displayed after the date "2022-07-02".

4

was not located "next to" the straw, which was found *inside* of the otherwise closed center console. Instead, as initially stated by Officer Radford, the magazine was likely initially underneath the driver's seat.

In any event, regardless of where the magazine was initially found, Mr. Smart was honest when he told law enforcement that he did not see any magazine in the car. PSR at ¶ 17. Mr. Smart was unaware of the magazine.

Paragraphs 16, 29 (location of the firearm): The PSR attempts to describe where a 9mm pistol was found in co-defendant Mr. Swingle's trunk. It states it "was found in trunk of the vehicle inside a holster." PSR at ¶ 16 [sic]. Officer Radford was again the officer who found the firearm. In his written report, he states the firearm "was immediately visible when the trunk was opened." That is incorrect.

The search of the vehicle's trunk begins at approximate time-stamp 15:54:29 (when officer Radford first lifts up the trunk). *See* Attachment 1. When the trunk is first opened, no firearm is visible. In fact, the trunk is full of numerous items which are strewn about the trunk. Officer Radford proceeded to remove these items from the trunk. The small, holstered firearm is eventually found after approximately three minutes of searching. *See id*. at time-stamp 15:57:20. (Officer Radford held up the small firearm and its size, shape, and color can clearly be seen at Attachment 1 time-stamp 15:57:22. Notably, the small-sized firearm would camouflage in with the trunk's fabric and color). It is only located after Officer Radford removed these items from the trunk, including a tool kit, car jack, and a spare tire.  As the government correctly described: "The firearm was located after an officer removed layers of items from the trunk, including items that likely

5

stay with the vehicle, such as jumper cables and a jack." Doc. 54 at 2-3. It was found "at the very bottom of the trunk." *Id*. The PSR omits these important facts.

Paragraphs 43, 48, 49, 51, 56 (criminal history points): The PSR assigns a total of 19 criminal history points. It is unclear whether that is correct. Instead, Mr. Smart may have 15 total points, which would still place him in Category VI.

First, because it is a municipal court conviction, the prior conviction in paragraph 43 would only obtain a criminal history point if it were shown that the municipal ordinance violation would also be a categorical match to state law – such that it also categorically "violates state criminal law." *United States v. Abeyta*, 877 F.3d 935, 938 (10th Cir. 2017); *see also* U.S.S.G. § 4B1.2(c)(2) ("local ordinance violations").[4] Second, the prior conviction in paragraph 48 might only be assigned one point, given that the June 14, 2019 revocation in that case occurred on the same day as the revocation sentence that had previously been counted in paragraph 44. *See* U.S.S.G. § 4A1.2, application note 11 (instructing that "[w]here a revocation applies to multiple sentences", the revocation sentence is only applied once, "to the sentence that will result in the greatest increase in criminal history points"). Third, both because it was a municipal court offense and because the offense was a low-grade misdemeanor, the prior conviction in paragraph 49 might obtain zero criminal history points per either Section 4A1.2(c)(1) or (c)(2). Fourth and similarly, the same is true about the prior

---

[4] Similar to the prior conviction at issue in PSR paragraph 43 (which was out of Oklahoma City, OK), undersigned counsel has previously successfully argued that Denver's municipal code violation for petty theft should not obtain any criminal history points, per Section 4B1.2(c)(2). *See U.S. v. Flores*, 17-cr-369-PAB (D. Colo.) (Docs. 22 (PSR Objection) & 33 (Statement of Reasons, showing agreement with Mr. Flores' guideline calculation).

conviction in paragraph 51, where the municipal court violation "Under Influence" would only receive a criminal history point if it was a categorical match to state law.  Even still, if the prior conviction is "similar to" the Guideline's listed offense of "public intoxication", it would never receive criminal history points. § 4A1.2(c)(2). *See also* PSR at ¶ 51 ("The defendant was arrested for public intoxication").

In short, while it may be argued that Mr. Smart should correctly be assessed 15 criminal history points, such an argument is inconsequential to the guideline calculation. Thus, out of concerns for judicial efficiency, more extensive argument on these issues is not necessary.

Paragraph 60: The PSR states that the financial affidavits and releases that were mailed to Mr. Smart by the Probation Office have not been returned. Mr. Smart only recently received these materials in the mail in mid-to-late December.  Even then, he has no way of returning the materials to the Probation Office, as a stamped return envelope was not provided by the Probation Office.

Paragraph 17 and Page R-3: The PSR at least twice references allegations that Mr. Smart made statements that he had "his own firearm." Mr. Smart denies ever having his own firearm. He has not had his "own firearm", nor does Mr. Smart have any history of possessing firearms in his prior interactions with law enforcement.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
*Attorney for Defendant Tory Smart*


CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2022, I filed the foregoing ***Defendant's Objections and Response to the Presentence Report*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Andrea L. Surratt, Assistant United States Attorney
Email:  andrea.surratt@usdoj.gov

Michael A. Faye
Email: michael@glassmanfaye.com
*Attorney for Defendant Derek Swingle*

I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Tory Shane Smart (via U.S. mail)

s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
*Attorney for Defendant Tory Smart*

8